UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JESUS MENDOZA | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. M-05-184 |
| | § | |
| DAVID MORON, *et al* | § | |
| | § | |
| | § | |

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### AND
### GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

   Before the Court is Defendants' Motion for Judgment on the Pleadings (Doc. 5), Plaintiff's Motion to Deny Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment (Doc. 7), Defendants' Reply to Plaintiff's Motion for Summary Judgment (Doc. 9), Plaintiff's Surreply to Defendants' Reply to Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings (Doc. 13), and Plaintiff's Brief in Support of Plaintiff's Disability (Doc. 16).  Upon hearing and consideration of the evidence, the Court **DENIES** Plaintiff's Motion for Summary Judgment on the issue of his disability and **GRANTS** Defendants' Motion for Judgment on the Pleadings with regard to Plaintiff's Section 1983 claims and right to amend his medical records.

### I.  Background

   Plaintiff appears before the Court *pro se* alleging he is disabled as a result of his sensitivity to electricity.  (Doc. 1).  He alleges that Dr. David Moron, Nancy E. Murray and Steven R. Aleman (collectively referred to as the "Defendants"), in their official capacities as agents of the Texas Department of State Health Services and Department of Assistive and Rehabilitative Services ("DARS"), violated his due process rights guaranteed by 42 U.S.C. 1983, Section 504 of the Rehabilitation Act, as well as his right to amend his medical records. (Doc. 1). Specifically, Plaintiff claims that Dr. Moron violated his right to be free from stigma by noting a potential mental disability in Plaintiff's medical records. (Doc. 1).  Plaintiff claims that Ms. Murray's determination that Plaintiff was eligible for rehabilitative services based on his mental disability but not on his alleged electricity sensitivity violated his due process rights and right to be free from stigma.  (Doc. 1).  Plaintiff claims that Mr. Aleman violated his due process rights by denying his appeal for rehabilitative benefits based on his electricity sensitivity disability. (Doc. 1).   Plaintiff also claims that each of the Defendants violated Section 504 of the

Rehabilitation Act, by denying his claim for rehabilitative services based on his alleged disability. (Doc. 1).  Finally, Plaintiff claims that each of the Defendants violated his right to "amend his medical records under federal law." (Doc. 1).

Defendants moved for judgment on the pleadings on the following grounds: first, Plaintiff alleged Section 1983 violations against individuals acting in their official capacities, precluding their qualifications as "persons" under Section 1983; second, that the issue of Plaintiff's disability has been adjudicated and is thus barred by collateral estoppel; and third, Plaintiff's claim of a right to "amend his medical records under federal law" does not exist.  (Doc. 5).

In response, Plaintiff filed his Motion to Deny Defendants' Motion for Judgment on the Pleadings and Motion for Summary Judgment (Doc. 7).  Plaintiff claimed that Defendants' grounds for judgment as a matter of law were contrary to the fact that his electrical sensitivity has been established. (Doc. 7).  Plaintiff submitted evidence that he claimed established his disability and a prescription for the services and technology sought. (Doc. 7). This evidence was a letter from Dr. Johnson, stating that "the patient history is compatible with that of rare individuals that have electromagnet field problems." (Doc. 7).  Plaintiff also submitted a letter from Dr. William Rea requesting a testing environment free of any electromagnetic fields that could affect the outcome of Plaintiff's tests for other disorders. (Doc. 7).

Plaintiff also claims that the issue of his disability is not barred by collateral estoppel because the administrative hearings held with DARS did not address his federal disability discrimination claim. (Doc. 7).  Furthermore, Plaintiff claims that the federal government recognizes electricity sensitivity as a disability.  (Doc. 7).  In support this assertion, Plaintiff submitted an article reporting that the World Heath Organization president claims to suffer from electricity sensitivity.  (Doc. 7).  According to Plaintiff,  Defendants' exclusion of the documents proving the legitimacy of his disability at his administrative hearing, as well as Defendants' denial of his disability in light of such evidence,  establishes violations of due process and Section 504 of the Rehabilitation Act. (Doc. 7). Finally, Plaintiff insists that a right to amend medical records exists under Texas law at 2001 Tex. Gen. Laws 1511, and that due process includes his right to be free from unreasonable government stigma.  (Doc. 7).

Defendants responded that Plaintiff failed to address whether Defendants are "persons" as defined by Section 1983, and that his cited statute guaranteeing a right to amend medical records does not exist.  (Doc. 9).  In regard to the issue of any potential disability, Defendants assert that Plaintiff essentially seeks to overturn the adjudicated denial of his disability.  (Doc. 9).  As such, his claim is barred by collateral estoppel.  (Doc. 9).

Subsequently, the Court heard argument in support of Plaintiff and Defendants' motions.  At the hearing, it was evident that Plaintiff sought to substantiate his disability claim. The Court permitted Plaintiff to supplement his briefing with any evidence that would establish an official diagnosis of his electricity sensitivity as a disability.  (05cv184 Pretrial Conference held on 8/3/2005).   Accordingly, Plaintiff submitted a brief in support of his disability.  (Doc. 16).  In addition to the evidence previously submitted in support of his motion for summary judgment, Plaintiff included a medical bill from Dr. Johnson that referenced  "EMF Sensitivity" under the section for procedures performed.  (Doc. 16).  Plaintiff also submitted the Social Security

Administration's denial of his disability claim, material describing allergies to electromagnetic fields, an affidavit of a personal acquaintance, and a professional recommendation. (Doc. 16).

## II.  Analysis

### A.  Standard of Review

Both parties effectively seek judgment as a matter of law.  Defendants style their motion as a motion for judgment on the pleadings, to which Plaintiff responded by submitting evidence in support of his argument.  (Doc. 5, Doc. 7).  Regardless of the style, a motion seeking judgment as a matter of law with supporting evidence is examined pursuant to Fed. R. Civ. Pro. 56. *Woods v. City of Galveston*, 5 F.Supp.2d 494, 497 (S.D. Tex. 1998)(internal citations omitted).

Accordingly, a district court will grant summary judgment when there is no genuine dispute as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. Pro. 56 (2005).  Summary judgment is proper "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party moving for summary judgment has "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323. The movant may meet this initial burden by submitting evidence that negates the existence of an element of the non-movant's claim or by showing that there is an absence of evidence to support the plaintiff's claim.  *Id.* at 323-325.

The burden then shifts to the non-movant to "produce evidence or designate specific facts showing the existence of a genuine issue for trial."  *Frank v. Xerox Corp*, 347 F.3d 130, 135 (5th Cir. 2003)(internal citations omitted).  Such evidence must establish the existence of a genuine issue and be sufficient to prevent a directed verdict against the non-movant at trial.  *Celotex Corp*, 477 U.S. at 321.  While doubts and reasonable inferences regarding the facts are resolved in favor of the non-moving party, the party's conclusory allegations, which are not supported by concrete and specific facts, will not defeat summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

### B.  Plaintiff's Section 504 Claim

The crux of Plaintiff's case is the determination of whether his alleged condition of electricity sensitivity qualifies as a disability.  To establish a claim for relief under the Rehabilitation Act, a plaintiff must prove that "(1) he is an 'individual with a disability'; (2) who is 'otherwise qualified'; (3) who worked for a 'program or activity receiving Federal financial assistance'; and (4) that he was discriminated against 'solely by reason of her or his disability'."

*Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997) citing 29 U.S.C. § 794(a); *Chander v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir. 1993). An individual has a disability if he (1) has a physical or mental impairment which 'substantially limits one or more of such person's major life activities'; and (2) has a record of such impairment; or (3) is regarded as having such an impairment. *Id.* citing 29 U.S.C. § 706(8)(B) (West Supp.1997). Thus, if Plaintiff is not disabled, he does not qualify for any relief under the Rehabilitation Act, nor can he prove a violation of any rights under the Act.

Plaintiff has failed to meet his burden of proof to establish a disability. The evidence Plaintiff submitted in support of his motion for summary judgment and subsequently in response to the Court's request does not establish that Plaintiff has ever been formally diagnosed with any disorder, allergy or condition involving electromagnetic fields or electricity sensitivity that would substantially limit one or more of his major life activities. (Doc. 7, Doc. 9, Doc. 16). Rather, the evidence shows that one doctor has suggested that electricity sensitivity is one of several diagnoses, and that he discussed this possibility with Plaintiff during one appointment. (Doc. 7). This evidence does not support a finding that Plaintiff suffered an impairment, much less one that would substantially limit one or more of his life activities.

More significantly, it is clear that Plaintiff seeks another adjudication of his disability. However, this issue has been determined twice prior to this litigation. (Doc. 1, Doc. 16). Plaintiff attached an incomplete copy of the Social Security Administration's record denying his disability benefits request. (Doc. 16). From what the Court can gather from the selected portions of the opinion, the Administrative Judge found that Plaintiff was severely impaired but not disabled. Moreover, he determined that Plaintiff's condition did not prevent him from finding alternate jobs more suitable for his alleged condition. (Doc. 16). Therefore, Plaintiff's life activities were not substantially limited, and he was not entitled to receive any disability benefits or supplemental security income payments based on his condition. (Doc. 16). Subsequent to the Administrative Judge's opinion, DARS found that Plaintiff was not eligible for rehabilitation benefits based on his claimed electricity sensitivity disability. (Doc. 1). Plaintiff submitted conclusive evidence that he is not disabled. (Doc. 16).

The Supreme Court favors the "application of collateral estoppel to determinations of administrative bodies acting in a judicial capacity that have achieved finality." *Grace v. Keystone Shipping Company*, 805 F.Sup. 436, 440-441 (E.D. Tex. 1992) citing *Astoria Fed. Sav. & Loan Ass'n v. Solomino*, 501 U.S. 104, 107, 111 S.Ct. 2166, 2169, 115 L.Ed.2d 96 (1991); *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). In the Fifth Circuit, administrative determinations are subject to the doctrine of collateral estoppel and relitigation is barred if (1) the issue was identical to the issue involved in the prior adjudication; (2) the issue was actually adjudicated; and (3) the determination of the issue in the prior adjudication was a critical and necessary part of the judgment in the earlier action. *See Castillo v. Railroad Retirement Bd.*, 725 F.2d 1012, 1014 (5th Cir. 1984); *Matter of Lewisville Properties, Inc*., 849 F.2d 946, 949 (5th Cir. 1988).

The Court finds that the issue of Plaintiff's disability was identical to the issue before the Administrative Judge and DARS. In both of the prior adjudications, Plaintiff was seeking benefits based on his claim that he was disabled, and he claimed to suffer from the same

condition that he presently brings before the Court. (Doc. 1, Doc. 16). Moreover, both of the prior adjudications resulted in findings that Plaintiff was not disabled, and consequently, Plaintiff was denied benefits. (Doc. 1, Doc. 16). Therefore, the issue of Plaintiff's disability has been conclusively determined prior to this litigation, and collateral estoppel bars relitigation of this issue.

Accordingly, Plaintiff cannot establish that he is disabled nor that a denial of benefits constituted a violation of the Rehabilitation Act. The Court **DENIES** Plaintiff's Motion for Summary Judgment with regard to his Section 504 claims.

### C.     Plaintiff's Section 1983 Claim

Plaintiff did not come forth with some evidence or specific facts refuting the impropriety of his Section 1983 claim. (Doc. 7, Doc. 9, Doc. 16). Plaintiff claims that Defendants, while "acting in their official capacities as agents of the State of Texas", violated his due process rights guaranteed by Section 1983 by noting a potential mental disability and denying rehabilitative benefits based on his electricity sensitivity disability. (Doc. 1). Section 1983 in relevant part provides that:

> "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ..." 42 U.S.C. § 1983.

However, states and their officials acting in official capacities are not "persons" under Section 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (recognizing that state officials literally are persons, but suits against them in their official capacities are not suits against the officials but are suits against their office, and as such, are not proper under Section 1983). Plaintiff has failed to name Defendants in a capacity in which they may be liable under Section 1983. Thus, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings with respect to Plaintiff's Section 1983 claim.

### D.    Plaintiff's "Right to Amend Medical Records" Claim

Plaintiff alleges that Defendant Dr. Moron violated his right to amend his medical records under federal law. (Doc. 1). In his subsequent responses, Plaintiff alleged that he has a right to amend his medical records in the State of Texas pursuant to 2001 Tex. Gen. Laws 1511. (Doc. 7). He also claims that due process provides the "right to be free from unreasonable government stigma." (Doc. 7). Plaintiff then seeks amendment of his records as a "reasonable accommodation to his disability."(Doc. 7).

There is no constitutional right for a patient to see his medical records. *Collins v. Kessler,* 2002 WL 1940303 (N.D. Cal. 2002) citing *Gotkin v. Miller*, 514 F.2d 125, 128 (2d Cir. 1975). Although the federal Freedom of Information and Privacy Acts contain provisions permitting

access to records, they apply to federal, not state, agencies. *Id.* Thus, to the extent Plaintiff is alleging a violation of his federal right to see, much less amend, his medical records, he has failed to allege a valid basis for such claim. *Id.*

Plaintiff directs the Court to 2001 Tex. Gen. Laws 1511, which references Senate Bill 11. 2001 Tex. Gen. Laws 1511. Senate Bill 11 amended Section 181.058 of the Texas Health and Safety Code to require custodians of medical records to maintain privacy for certain health information. Tex. S.B. 11, 77th Leg., R.S. (2001).[1] However, Senate Bill 11 and the revised Section 181.058 do not provide any process by which a patient may petition or request an amendment to his medical records. Tex. Health & Safety Code § 181.058, et seq. (Vernon 2005). The State of Texas only permits a patient to access his mental health records upon proper request. Tex. Health & Safety Code § 611.0045(a). Moreover, the patient is not permitted any right or process to petition the contents of the records, and the physician may deny access if he feels access would substantially harm the patient's health. Tex. Health & Safety Code § 611.0045(b), et seq. Therefore, the Plaintiff has failed to establish a valid basis for his claim to amend his medical records, and the Court finds that neither federal nor state law provides him with such right.

Ultimately, Plaintiff rests his claim to amend his medical records upon a constitutional "right to be free from unreasonable government stigma." (Doc. 7). However, the Supreme Court held that an injury to reputation, often proclaimed in the form of a stigma, is not a liberty interest protected by the Fourteenth Amendment. *Seigert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789,

---

[1] Section 181.058 provides that a "covered entity shall comply with the Health Insurance Portability and Accountability Act and Privacy Standards relating to:

    (1) an individual's access to the individual's protected health information;
    (2) amendment of protected health information;
    (3) uses and disclosures of protected health information, including requirements relating to consent; and
    (4) notice of privacy practices for protected health information.

A "covered entity" is any person who
    (A) for commercial, financial, or professional gain, monetary fees, or dues, or on a cooperative, nonprofit, or pro bono basis, engages, in whole or in part, and with real or constructive knowledge, in the practice of assembling, collecting, analyzing, using, evaluating, storing or transmitting protected health information. The term includes a business associate, health care payer, governmental unit, information or computer management entity, school, health researcher, health care facility, clinic, health care provider, or person who maintains an Internet site;
    (B) comes into possession of protected health information;
    (C) obtains or stores protected health information under this chapter; or
    (D) is an employee, agent or contractor of a person described by Paragraph (A), (B), or (C) insofar as the employee, agent or contractor creates, receives, obtains, maintains, uses or transmits protected health information. Tex. Health & Safety Code § 181.001(b)(1).

"Protected health information" means individually identifiable health information, including demographic information collected from an individual, that:
    (A) relates to:
        (i) the past, present, or future physical or mental health or condition of an individual;
        (ii) the provision of health care to an individual; or
        (iii) the past, present, or future payment for the provision of health care to an individual; and
    (B) identifies the individual with respect to which there is a reasonable basis to believe the information can be used to identify the individual. Tex. Health & Safety Code § 181.001(b)(5).

1794, 114 L.Ed.2d 277 (1991) citing *Paul v. Davis*, 424 U.S. 693, 711-712, 96 S.Ct. 1155, 1164-1165, 47 L.Ed.2d 405 (1976) (wherein plaintiff claimed a Section 1983 violation based upon the stigma he suffered when his photograph was included in a police flyer alerting citizens of shoplifters); *K.U. By and Through U. v. Alvin Indep. Sch. Dist*., 991 F. Supp. 599, 606-607 (S.D. Tex. 1998). Plaintiff points to no authority establishing a liberty interest in his reputation regarding mental health, and none in fact exists. *Id.* Accordingly, Plaintiff alleged violation concerned a right that is not recognized by federal or state courts, and consequently has failed to state a claim upon which relief may be granted. Therefore, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings with respect to Plaintiff's right to amend his medical records.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment addressing Plaintiff's disability because the issue is barred by collateral estoppel. Furthermore, the Court finds that Plaintiff has failed to state claims under Section 1983 and his alleged "right to amend his medical records." Thus, the Court **GRANTS** Defendants' Motion for Judgment on the Pleadings with regard to Plaintiff's Section 1983 claims and his right to amend his medical records. No other claims remain pending. Accordingly, this is a Final Judgment.

SO ORDERED this 28th day of February, 2006, at McAllen, Texas.

_____
Randy Crane
United States District Judge